BLUFF CREEK TOWNHOMES ASSOC., INC. v. HAMMON



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:BLUFF CREEK TOWNHOMES ASSOC., INC. v. HAMMON

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 BLUFF CREEK TOWNHOMES ASSOC., INC. v. HAMMON
2019 OK CIV APP 59
Case Number: 117753
Decided: 09/16/2019
Mandate Issued: 10/16/2019
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2019 OK CIV APP 59, __ P.3d __

 

BLUFF CREEK TOWNHOMES ASSOCIATION, INC., Plaintiff/Appellee,
v.
DEMARCUS HAMMON, Defendant/Appellant.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE LISA T. DAVIS, TRIAL JUDGE

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS

Michael Loyd, MICHAEL L. LOYD & ASSOCIATES, Bethany, Oklahoma, for Plaintiff/Appellee

Demarcus Hammon, Oklahoma City, Oklahoma, Pro se

JANE P. WISEMAN, VICE-CHIEF JUDGE:

¶1 Demarcus L. Hammon appeals a trial court order granting judgment in favor of Bluff Creek Townhomes Association, Inc., foreclosing Bluff Creek's lien on Hammon's townhome, ordering the sale of the townhome, and dismissing Hammon's counterclaim.[1] The primary issue on appeal is whether the trial court's "dismissal" of Hammon's counterclaim was proper. We review this case without appellate briefing pursuant to Oklahoma Supreme Court Rule 1.36, 12 O.S. Supp. 2018, ch. 15, app. 1. Our review tells us the trial court's adjudication was in error, and we reverse and remand for further proceedings.

FACTS AND PROCEDURAL BACKGROUND

¶2 Bluff Creek filed a petition on May 11, 2017, alleging Hammon owns the townhome located at 6552 N. Meridian Avenue, Unit 104, in Oklahoma City, which is subject to the Declaration of Covenants and Restrictions of Bluff Creek Townhomes Unit Ownership of Estates (the Declaration). Bluff Creek alleged the Declaration was recorded with the County Clerk of Oklahoma County, each homeowner in the association "is assessed monthly dues to pay for the utilities, upkeep, and maintenance of the units and common areas," and Hammon was past due in paying dues and owed $8,603.68 as of November 20, 2016, plus ongoing dues of $87.12 a month. It demanded payment, but Hammon refused to pay. Bluff Creek filed a lien on Hammon's property with the County Clerk on December 17, 2013, and refiled a notice of lien on December 5, 2016. Bluff Creek sought judgment in the amount of $8,603.68, plus the ongoing charges of $87.12 a month, attorney fees and costs, and foreclosure of its lien.

¶3 In his answer, Hammon denied he owed past dues or that a lien had been placed on the property. Under the heading "Counterclaims," Hammon said:

Defendant property that is the subject of this case has mold from water drainage into the property. The mold has caused damage to property whereby Defendant is unable to live in the property. Defendant has notified Plaintiff of damages in excess of $10,000.00 and Plaintiff has refused to fix the property.

Hammon asked the Court to dismiss Bluff Creek's case and find in his favor on his counterclaim.

¶4 In response, Bluff Creek argued that Hammon in his counterclaim failed to state a claim on which any relief could be granted and asked that the counterclaim be dismissed. It also asserted affirmative defenses of statute of limitations, waiver, contributory negligence, estoppel, release and waiver. No separate ruling on Bluff Creek's request to dismiss the counterclaim appears of record.

¶5 Bluff Creek filed a motion for summary judgment urging as undisputed the facts we summarize and quote here. On October 26, 2007, Hammon purchased Unit 104 located in Bluff Creek Townhomes, which is a unit ownership estate. The deed was recorded in the office of the County Clerk of Oklahoma County. When Hammon purchased Unit 104, he was subject to the Declaration. "Hammon had admitted in his deposition, that there were homeowners['] dues payable monthly to the homeowners['] association" and "he has not made any payments of his homeowner[s'] dues since some time in 2009." Because Hammon failed to pay homeowners' dues, Bluff Creek's president filed a lien on Hammon's property on December 5, 2016, and recorded it with the County Clerk. According to Bluff Creek's records, Hammon owes $8,603.68 through November 2016, and $87.12 per month thereafter, for a total of $10,453.20.

¶6 Bluff Creek maintained there is no substantial controversy as to any material fact and nothing in Hammon's answer is more than a general denial. It argued Hammon admitted (1) he owns Unit 104, (2) he owes homeowners' association dues, (3) he has not paid the dues, and (4) the property damage he claims was to the interior of his home and its contents. Bluff Creek alleged, "It is stated clearly in the Declarations that the homeowners['] association insures only the exterior and common elements of the property." Bluff Creek asserts that the Declaration also provides that the unit owners are responsible for insuring their units' contents and personal property and that "'under no circumstances shall the Association be required to purchase any insurance covering . . . the interior space owned individually by any unit owner.'"

¶7 Hammon filed an objection to Bluff Creek's motion for summary judgment and a cross-motion for summary judgment. Hammon claimed he never received a copy of Bluff Creek's motion for summary judgment, but a hearing was held on September 28, 2018. He said he was unaware he needed to file a response to the motion for summary judgment. He stated there is no dispute (1) Bluff Creek is seeking to recover the dues it claims he owes, (2) Bluff Creek owners are expected to pay dues of $87.12 a month, (3) he purchased a unit in Bluff Creek, (4) he paid his monthly dues "until 2009 when he decided to stop paying dues after management failed to fix damages done to his property by virtue of the unit flooding because of water seeping into the unit from [the] outside," (5) Bluff Creek is responsible for the unit's exterior "and insuring that maintenance is kept up for the safety and security of the property owners," and (6) water seeped into his unit from the exterior, destroying his personal property and causing mold. He asserted that "tenants have the right to withhold homeowners['] dues when property owners refuse to correct conditions which make the homeowners['] living arrangement unsafe and inhabitable [sic]." He claims he refused to pay the dues and moved out of the unit because Bluff Creek refused to fix the defect in the building's exterior. He complained numerous times that seepage from the exterior of the building caused flooding in his home, but Bluff Creek's only response was that it was not responsible for matters involving his home's interior. He asserted Bluff Creek breached the implied warranty of habitability and that violated "Oklahoma Residential Landlord and Tenant Act 41 O.S. § 2001 102(1) et seq."

¶8 Hammon argued he was entitled to summary judgment on his counterclaim and cited the following facts quoted and summarized here as undisputed. There is no dispute that he filed a counterclaim and "that water entered [his] dwelling from the exterior of the building unit where he bought a unit from Bluff Creek Townhouses." "There is no dispute that [he] bought unit 104 formerly owned by a tenant on the grounds of property owned by [Bluff Creek] in 2007." The estimate to repair his unit exceeds $21,000. "There is no dispute that water seeping into the unit caused mold to form inside [his] dwelling place destroying furniture, chairs, clothing, tainting walls, sogging wet carpet and other fixtures, leaving stinking-murky smells." There is no dispute that Bluff Creek "was responsible for securing the outside of the dwelling where the water seeped into the interior of [his] unit." He notified Bluff Creek that the exterior wall needed repair: "[I]n 2009, after I bought the unit that I began complaining about the unit flooding when it rained and that it was brought to the attention of Nathan a man [he] knew as the president of the Homeowners Association."

¶9 Hammon attached his own affidavit, photos of damage to the townhome, and estimates for repairing the damage. He also included a report regarding fungi and mold that said "water migration has come from along the west side through the patio doors." He states in his affidavit that "for almost two years [he] made it known to [Bluff Creek] that water was seeping into his house from the exterior of the property he purchased from former tenants" and that "there is no dispute that [Bluff Creek] is solely responsible for correcting defects in property that they own and [Hammon] agrees that he's responsible for all activity which occurs inside the dwelling."

¶10 On October 26, 2018, the trial court's journal entry of judgment was filed finding Bluff Creek was entitled to enforce its lien in the amount of $10,453.20, the lien is a valid lien on Unit 104, and the property should be sold by the Oklahoma County Sheriff to satisfy the lien. The court further found Bluff Creek "is not liable for damages to [Hammon's] property and that [Hammon's] counter claim should be dismissed."

¶11 On November 1, 2018, Hammon filed a motion to vacate, which the trial court denied.

¶12 Hammon now appeals.[2]

STANDARD OF REVIEW

¶13 "The standard of review for an order dismissing a case for failure to state a claim upon which relief can be granted is de novo and involves consideration of whether a plaintiff's petition is legally sufficient." Fanning v. Brown, 2004 OK 7, ¶ 4, 85 P.3d 841. "An appeal on summary judgment comes to this court as a de novo review." Deutsche Bank Nat'l Trust Co. v. Richardson, 2012 OK 15, ¶ 3, 273 P.3d 50.

ANALYSIS

¶14 Title 60 O.S.2011 § 852(C) grants a homeowners' association "the power to enforce any obligation in connection with membership in the owners['] association by means of a levy or assessment which may become a lien upon the separately or commonly owned lots, parcels or areas of defaulting owners or members." A lien held by a homeowners' association "may be foreclosed in any manner provided by law for the foreclosure of mortgages or deeds of trust, with or without a power of sale." 60 O.S.2011 § 852(C).

¶15 Bluff Creek in its motion states the Declaration establishes the dues obligation and refers to the attached Declaration, but the copy of the summary judgment motion in the record on appeal has no exhibits attached. As a result, we do not know the exact terms of the Declaration. This Court, however, recognizes Hammon admitted that Bluff Creek owners are expected to pay $87.12 in monthly dues and that Hammon stopped paying dues in 2009. However, this Court's inquiry does not end here. Bluff Creek asserted Hammon's counterclaim failed to state a claim on which relief could be granted. The Court found Bluff Creek "is not liable for damages to [Hammon's] property and that [his] counter claim should be dismissed." Even if Hammon failed to pay homeowners' dues, he is not necessarily precluded from seeking damages for Bluff Creek's failure to repair the common areas of the townhomes, which he asserts caused damage to his townhome.

¶16 Title 12 O.S.2011 § 2012(B)(6) governs the defense of failure to state a claim on which relief can be granted. The Oklahoma Supreme Court has consistently held:

If relief is possible under any set of facts which can be established and is consistent with the allegations, a motion to dismiss should be denied. A motion to dismiss is properly granted only when there are no facts consistent with the allegations under any cognizable legal theory or there are insufficient facts under a cognizable legal theory.

Dani v. Miller, 2016 OK 35, ¶ 11, 374 P.3d 779 (citations omitted). Simply put, Hammon in his counterclaim alleged mold accumulation and damage from water entering his townhome from the exterior and that he notified Bluff Creek but Bluff Creek refused to fix or address the issue. Before the trial court could properly dismiss Hammon's claim under § 2012(B)(6), it was required to find that Hammon's "allegations indicate beyond any doubt that [he] can prove no set of facts which would entitle him to relief." Frazier v. Bryan Mem'l Hosp. Auth., 1989 OK 73, ¶ 13, 775 P.2d 281. Hammon's counterclaim asserts a claim for damage to his property from water entering his townhome from the exterior. It is premature to find he can prove no set of facts under this claim that would entitle him to relief.

¶17 And if the trial court found Hammon could prove no set of facts entitling him to relief, the court was required to apply 12 O.S.2011 § 2012(G): "On granting a motion to dismiss a claim for relief, the court shall grant leave to amend if the defect can be remedied and shall specify the time within which an amended pleading shall be filed." If the trial court granted Bluff Creek's motion pursuant to 12 O.S.2011 § 2012(B)(6), its failure to grant Hammon leave to amend was error.

¶18 Hammon states in his summary judgment response that the trial court granted him until October 12, 2018, to respond, and it appears from the record that he filed his objection to the motion for summary judgment and a cross-motion for summary judgment on October 11, 2018. The journal entry of judgment was filed on October 26, 2018. The trial court stated in its order that it examined the pleadings and the evidence introduced. If the trial court considered matters outside the pleadings and based its decision on those documents or exhibits, then it was not dismissing Hammon's claim but was granting judgment in favor of Bluff Creek on his counterclaim and denying Hammon's motion for summary judgment on his counterclaim. Title 12 O.S.2011 § 2012(B) provides:

If, on a motion asserting the defense numbered 6 of this subsection to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and all parties shall be given reasonable opportunity to present all material made pertinent to the motion by the rules for summary judgment.

¶19 As to compliance with Rule 13 of the Rules for the District Courts, 12 O.S. Supp. 2013, ch. 2, app., Bluff Creek does not appear to have disputed Hammon's statements of undisputed fact in a filing with the Court addressing Bluff Creek's responsibility for repairs to the exterior of the unit or the claim that water seeped into the unit because Bluff Creek failed to investigate or repair the problem. Bluff Creek may have argued this issue to the trial court, but nothing in the record on appeal indicates it did so. We note that Bluff Creek's argument in its summary judgment motion on the question of its obligations to Hammon speaks only in terms of its duty to "insure" the exterior and common elements of the property, its lack of duty "to purchase any insurance covering . . . the interior space" of any unit owner, and Hammon's responsibility to "insure" his personal property and the unit's contents. Even if undisputed, this insurance argument does not as a matter of law resolve the question of Bluff Creek's duty to any given unit owner if it fails to make exterior repairs, particularly in light of the absence of the Declaration in the record.

¶20 In contrast, Hammon presented his affidavit, photographs of the claimed water damage, an inspection report addressing that damage, and a report indicating water was entering the townhome from outside. Based on these submissions, we conclude Hammon presented evidence, at a minimum, sufficient to show that material facts remain in dispute regarding his counterclaim for property damage.

¶21 A fair reading of Hammon's counterclaim shows that his claims against Bluff Creek arise from the obligations and responsibilities expressed in the Declaration. We analyze the parties' duties pursuant to the Declaration as contractual obligations. See, e.g., Finance & Inv. Co., Ltd. v. UMA, L.L.C., 2009 OK CIV APP 105, ¶ 11, 227 P.3d 1082 ("[A] restrictive covenant is a contract enforceable as any other contract."); Grindstaff v. Oaks Owners' Ass'n, Inc., 2016 OK CIV APP 73, 386 P.3d 1035 (analyzing whether a declaration of covenants, conditions, and restrictions and homeowners' association's bylaws were contracts of adhesion). Hammon asserted a claim arising from the Declaration regarding Bluff Creek's care of the common areas of the townhomes. "The purpose of statutes relating to counterclaims is to make possible the determination of all controversies growing out of a transaction in one proceeding thus avoiding a multiplicity of lawsuits, and such statutes will be liberally construed in order to carry out [this] purpose." Meyer v. Vance, 1965 OK 135, ¶ 0, 406 P.2d 996 (syl. no. 3 by the Court). For example, a "defendant may plead as a counterclaim a cause of action arising to him upon the plaintiff's breach of covenant of quiet enjoyment contained in the deed conveying the real estate upon which the mortgage is sought to be foreclosed." Tracy v. Norvell, 1923 OK 591, ¶ 0, 219 P. 384 (syl. no. 3 by the Court). A defendant, however, is not allowed to "plead a counterclaim" where his claim is not "connected with the transaction set forth in plaintiff's petition as the foundation of plaintiff's claim." Id. ¶ 0 (syl. no. 2 by the Court).

¶22 Hammon's counterclaim against Bluff Creek may give rise to the application of the doctrines of setoff or recoupment. "The equitable doctrine of set-off permits the set-off of an obligation under one contract against the obligation of any other contract between the same parties . . . ." Nelson v. Linn Midcontinent Exploration, L.L.C., 2009 OK CIV APP 99, ¶ 9, 228 P.3d 533. "The validity of a counterclaim or set-off is to be determined by the inquiry whether or not the substance of the facts stated would constitute a cause of action on behalf of the defendant against the plaintiff, if the plaintiff had not sued defendant." State Bank of Dakoma v. Weaber, 1926 OK 200, ¶ 0, 256 P. 50 (syl. no. 3 by the Court). A recoupment, on the other hand "is the 'right of the defendant to have a deduction from the amount of the plaintiff's damages, for the reason that the plaintiff has not complied with the cross-obligations or independent covenants arising under the same contract.'" Nelson, 2009 OK CIV APP 99, ¶ 7 (quoting Bank of Oklahoma, N.A. v. Briscoe, 1995 OK CIV APP 156, ¶ 25, 911 P.2d 311).

¶23 Although it is not disputed that Hammon has not paid his homeowners' dues for the period stated, we cannot determine, in the absence of a copy of the Declaration, whether Hammon may withhold those dues while his damage claim is pending.[3] Based on this record, the trial court either prematurely dismissed Hammon's counterclaim and gave him no opportunity to amend or granted summary judgment to Bluff Creek on his counterclaim. The trial court did find Bluff Creek was not liable to Hammon for any damage. By "dismissing"[4] Hammon's counterclaim, the trial court precluded Hammon from pursuing his claim for property damage caused by Bluff Creek's alleged failure to meet its contractual obligations and from obtaining relief under his counterclaim, if he is able to prove such failure. If, on the other hand, the trial court considered matters outside the pleadings or found Bluff Creek was entitled to summary judgment on undisputed facts, then summary judgment was not proper because Hammon presented sufficient evidence to show material facts remain in dispute.

CONCLUSION

¶24 The trial court erred in either dismissing Hammon's counterclaim without allowing him to amend or granting summary judgment to Bluff Creek on his counterclaim and in determining Bluff Creek was not liable for the damage to Hammon's property. Accordingly, we reverse the decision of the trial court and remand for further proceedings.

¶25 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS. 

BARNES, P.J., and RAPP, J., concur.

FOOTNOTES

[1] We deal at length further in the Opinion with the question of whether this is a dismissal or a summary judgment. See infra note 4.

[2] Hammon's petition in error seeks reversal of the October 26, 2018, order. He did not amend his petition in error to raise the propriety of the trial court's denial of his motion to vacate, and it is not a subject of this appeal.

[3] Hammon relies on the Oklahoma Residential Landlord and Tenant Act, 41 O.S.2011 & Supp. 2018 §§ 101-201 to support his argument regarding Bluff Creek's duty to make repairs to keep the property habitable. This remains an issue for resolution on remand due to unresolved disputed issues of material fact as discussed in this Opinion.

[4] We continue to note that, under the plain language of Rule 13 and 12 O.S.2011 § 2056, granting a motion for summary judgment does not result in a dismissal, but in a judgment in favor of one party or the other.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1995 OK CIV APP 156, 911 P.2d 311, 67 OBJ 560, Bank of Oklahoma, N.A. v. Briscoe
Discussed
 2009 OK CIV APP 99, 228 P.3d 533, NELSON v. LINN MIDCONTINENT EXPLORATION, L.L.C.
Discussed at Length
 2009 OK CIV APP 105, 227 P.3d 1082, FINANCE & INVESTMENT CO., LTD. V. UMA, L.L.C.
Discussed
 2016 OK CIV APP 73, 386 P.3d 1035, GRINDSTAFF v. THE OAKS OWNERS' ASSOCIATION, INC.
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1989 OK 73, 775 P.2d 281, 60 OBJ 1202, Frazier v. Bryan Memorial Hosp. Authority
Discussed
 1965 OK 135, 406 P.2d 996, MEYER v. VANCE
Discussed
 1923 OK 591, 219 P. 384, 92 Okla. 240, TRACY v. NORVELL
Discussed
 2004 OK 7, 85 P.3d 841, FANNING v. BROWN
Discussed
 2012 OK 15, 273 P.3d 50, DEUTSCHE BANK NATIONAL TRUST COMPANY v. RICHARDSON
Discussed
 2016 OK 35, 374 P.3d 779, DANI v. MILLER
Discussed
 1926 OK 200, 256 P. 50, 125 Okla. 186, STATE BANK OF DAKOMA v. WEABER
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 2056, Motion for Summary Judgment
Cited
 12 O.S. 2012, Defenses and Objections - When and How Presented - By Pleading or Motion
Discussed at Length
Title 60. Property
 Cite
Name
Level

 60 O.S. 852, Owners Association
Discussed


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA